LOUISIANA STATE PENITENTIARY

DIRECTIVE # 09.002

DATE:              02/22/08

CHAPTER:           SECURITY AND CONTROL

SUBJECT:           USE OF FORCE

REFERENCES:        Department Regulation Nos.C-01-008, C-02-006; Penitentiary Directive Nos.
                   04.003, 09.007/B, 09.021, 10.002

ACA STANDARDS:  4-4084, 4-4084-1, 4-4090-92, 4-4173, 4-4199,
                4-4200-04, 4-4206, 4-4281, 4-4399,
                1-CTA-3A-16, 1-CTA-3A-17, -CTA-3A-19,
                1-CTA-3A-20, 1-CTA-3A-23, 1-CTA-3A-24,
                1-CTA-3B-08

**PURPOSE:**  To provide guidance regarding the use of force.

**APPLICABILITY:**   All Louisiana State Penitentiary employees.

**POLICY:**      It is the policy of Louisiana State Penitentiary that all reasonable steps be taken to minimize situations requiring the use of force by staff against inmates and to minimize the amount of force used in those situations.   It is recognized, however, that force may be necessary to accomplish the goals of the Department (including public safety, the safety of staff and inmates, and the maintenance of stability within the institution). This policy is designed to assist employees in acting reasonably when confronted with situations requiring the use of force.  Employees will be provided with proper training and guidance in the use of force applications.

Procedures governing the use of force include both annual qualifications for staff likely to engage in activity that may involve the use of reasonable force and necessary certification under applicable regulating statutes for employees issued firearms or other security equipment.  Security equipment utilized in use of force applications shall be in accordance with Penitentiary Directive No. 09.021 and Department Regulation No. C-01-008 and C-02-006.   Only approved state-issued equipment will be used in the performance of official duties.

It is further the policy of Louisiana State Penitentiary that firearms, gas, mace, irritant dust, electrical devices, restraints, intermediate/impact weapons, or less-than-lethal munitions and devices be used only by employees specifically trained in their use and when all available less drastic measures fail to



STATE'S EXHIBIT
9
Blumberg No. 5138

LSP - 09.002
December 20, 2006
Page 2

accomplish control in handling group disturbances and subduing individuals. Said force employed shall be proportional to the threat to which it is a response and shall cease when the resistance ceases.

## DEFINITIONS:

1.    Force: Bodily contact of some nature – either with or without the use of restraint, electrical device, chemical agent, less-than-lethal munition and device, or firearm – which causes someone either to act in a manner contrary to his intent or to change his behavior to the desired action.

2.    Necessary Force: Force needed to gain control of an individual.

3.    Reasonable Force: Force justified by the specific elements of a situation, such as the amount of force responded to, a person's perception of danger, the existence of non-forceful alternatives, and any other relevant factors.

4.    Excessive Force: Force used in a situation justifying force that exceeds the force necessary to control the situation or continues after the person is subdued or restrained.

5.    Less Than Lethal Force: Force which normally causes neither death nor serious bodily injury.

6.    Lethal Force: Any intentional force that is capable of causing death or serious physical injury.

7.    Security Equipment: Includes, but is not limited to, chemical agents, electronic devices, batons, firearms, restraining devices, intermediate/impact weapons, canine units, and less-than-lethal munitions and devices.

## PROCEDURE:

A.    USE OF FORCE GUIDELINES

    1.    General Considerations:

        a.    Whenever possible, the determination to use force shall be made by the highest ranking supervisor in the immediate area.

        b.    Whenever possible, force shall not be used against mentally ill or mentally retarded inmates before appropriate Medical or Mental Health personnel can be called to the scene.

        c.    Reasonable steps shall be taken to minimize the amount of force used.

        d.    The use of any type of force for punishment or reprisal is strictly

LSP - 09.002
December 20, 2006
Page 3

prohibited.

e. Employees will not carry security equipment on their person unless authorized by the Warden or his designee. Restraining devices may be carried by supervisory personnel while on duty. Handcuffs must be worn in an approved attachable handcuff case.

f. Individual units may maintain small amounts of security equipment in areas inaccessible to inmates.

g. Assigned trip officers shall be authorized to use chemical agents and the ASP in order to prevent an escape or to stop a disturbance while escorting inmates outside institutional grounds.

h. With the exception of extreme emergencies, firearms are not permitted inside a secure compound or area unless authorized by the Warden.

2. Lethal Force:

a. Lethal force is force that is capable of causing death or serious physical injury.

b. It may be used only as a last resort and then only in the following instances:

(1) To prevent the commission of a felony, including escape.

(2) To prevent an act which could result in death or severe bodily harm to one's self or another person.

3. Less than Lethal Force:

a. Less Than Lethal force is force which normally causes neither death nor serious bodily injury.

b. Physical force, chemical agents, electrical devices, batons, intermediate/impact weapons, restraining devices, the employment of less-than-lethal munitions, and canine units may be used only in the following instances:

(1) Prior to the use of lethal force:

(a) To prevent the commission of a felony, including escape.

(b) To prevent an act which could result in death or severe bodily harm to one's self or to another person.

LSP - 09.002
December 20, 2006
Page 4

      (2)     To defend one's self or others against any physical assault.

      (3)     To prevent commission of a misdemeanor.

(4)    To prevent serious damage to property.

      (5)     To enforce institutional rules.

      (6)     To prevent or quell a disturbance or riot (to quell a disturbance that could lead to a serious situation which may jeopardize the safety, security and good order of the institution, or to regain control of the institution or part of it).

c.    The amount of physical force applied shall be appropriate to the amount of resistance. Once compliance starts, escalation of force stops.

d.    When the degree of physical force applied is inadequate, additional force may be exerted, e.g. the use of chemical agents, batons, electronic devices, restraining devices, intermediate/impact weapons, less-than-lethal munitions, and canine units.

e.    Except in emergency situations, the highest ranking supervisor in the immediate area should make the determination as to the use of force.

f.    Chemical Agents and Electrical Devices – Special Conditions

      (1)    Shall not be used without approval of the highest ranking supervisor on duty in the immediate area or repeatedly against an inmate in a short period of time. In case of incident on an outside trip, the senior trip officer will make the determination.

      (2)    Medical or Mental Health staff should be called to the scene to make a determination prior to the use of force against mentally ill or mentally retarded inmates. However, force may be used when there is a possibility of loss of life, serious bodily harm, or serious property destruction.

      (3)    Whenever possible under prevailing circumstances, Medical and/or Mental Health staff should be contacted prior to the non-corporate use of chemical agents when it is known that the inmate's medical or mental health condition may mitigate against such use.

      (4)    In all instances where use of force occurs, the Mental Health Director will receive a copy of the Unusual Occurrence Report.

LSP - 09.002
December 20, 2006
Page 5

g.    Individuals affected by chemical agents shall be permitted to wash their face, eyes or other exposed skin areas as soon as possible after use.

h.    In all cases, a minimum amount of force necessary to control the situation will be used.—

B.    UTILIZATION OF FIREARMS

1.    All staff, when assigned weapons, shall use the following procedure in the prevention of escapes and in situations described in Section A, 2-Lethal Force.

Firearms should be utilized only as a last resort and only as authorized herein.

a.    A verbal warning to cease actions (if feasible).  In the case of an escape, this should occur when an unauthorized inmate(s) gets within 10 feet of a perimeter fence.

b.    Warning shot (if feasible) to ensure that the inmate is absolutely aware of the seriousness and probable consequences of his actions (the only exception would be when the circumstances require immediate action to protect life or stop an escape in progress where a verbal warning or warning shot is not practical).

c.    Shoot to disable (render inmate incapable of continuing with action; which prompts the use of lethal force).

2.    Officers should be aware of escape attempts via aircraft.

a.    Officers should contact the Control Center of the approach of low flying or unauthorized aircraft.

b.    The Control Center shall advise appropriate tower officers of any expected aircraft.

c.    If it is suspected an escape attempt is being made by an aircraft, the officer should gather as much information as possible as to the craft's identifying markings, number of occupants and possible number of inmates involved.

d.    If an officer is fired upon by the aircraft or if the occupants are in the act of committing a felony, the officer may fire to protect himself, attempt to disable the craft, and to prevent its departure.

e.    The Control Center and highest ranking officer in the area shall notify the appropriate authorities of unapproved aircraft as soon as possible.

LSP - 09.002
December 20, 2006
Page 6

C.    ARMED DUTY POSTS

1.    With the exception of those inmates being transported outside the institution, armed duty posts shall be positioned in areas inaccessible to inmates. Armed guards shall position themselves at a minimum of seventy-five (75) feet from all inmates.

2.    Armed escorts should exercise extreme caution during any movement of inmates in the course of outside trips and farm line operations. Mass movement of inmates from a security perimeter to another area requires armed escorts during hours of darkness or at time designated by the Warden.

3.    Inmates are not allowed in the Armory or in areas where officers receive and/or return security equipment.

D.    ASP

1.    On approval by the Warden, security supervisors of segregated areas shall be authorized to use the ASP (expandable tactical baton) in the performance of assigned duties. The ASP shall be stored in a proper storage compartment until such time as use is required. The ASP shall be inventoried.

2.    Trip officers shall be authorized to carry the ASP while escorting inmates outside the institution. The ASP shall be signed out from the Armory as part of regular security equipment issue.

3.    Only those staff who have been properly trained and certified shall be permitted to use the ASP.

E.    USE OF GAS, MACE, IRRITANT DUST, ELECTRONIC DEVICES, INTERMEDIATE/IMPACT WEAPONS AND LESS-THAN-LETHAL MUNITIONS AND DEVICES

1.    Gas, mace, irritant dust, electronic devices, intermediate/impact weapons, or less-than-lethal munitions and devices may be used against an inmate or a group of inmates er only to quell a riot and/or prevent loss of life, serious injury to person(s), extensive destruction of property, to quell a disturbance that could lead to a serious situation which may jeopardize the safety, security and good order of the institution, or to regain control of the institution or a part of it.

2.    A determination for corporate or mass use of gas, mace, irritant dust, electronic devices, intermediate/impact weapons or less-than-lethal munitions and devices should be made by the Warden or designee. (who should be the highest ranking supervisor on duty in the immediate area where the incident is occurring).

LSP - 09.002
December 20, 2006
Page 7

If the electronic capture shield is to be used, the highest ranking official on duty in the immediate area where the incident is occurring will designate the officer who will use the shield. Only officers who have been trained in the proper use of the electronic capture shield may be designated to use the shield.

3.    If the inmate(s) is assigned to an area designated as a Mental Health Treatment Unit, or any inmate who is suspected of impaired mental health functioning, the supervisor will contact the on-duty Mental Health Clinician and request assistance.

a.    Whenever possible under prevailing circumstances, no gas, mace, electronic devices, irritant dust, intermediate/impact weapons, physical force, or less-than-lethal munitions and devices or physical force will be used against an inmate who is assigned to a Mental Health Treatment Unit until the Mental Health Clinician has arrived and attempted to control the situation, unless it is necessary to prevent loss of life, serious injury to person(s), or extensive property damage.

b.    The Mental Health Clinician must respond, assess, and attempt an intervention prior to the use of a chemical agent or the Cell Entry Team.

c.    If the intervention is not successful, the Mental Health Clinician may authorize the use of chemical agents or the Cell Entry Team.

d.    In such cases the Mental Health Clinician will remain present at the head of the tier to monitor the inmate's behavior during the use of chemical agents or Cell Entry Team.

e.    The Mental Health Clinician will document the assessment and the success or failure of the intervention, time of incident, and follow-up treatment.

f.    When immediate action is required, consultation between Mental Health Clinician and the Medical Director will occur as soon as reasonably possible but no later than 72 hours to review the appropriateness of the action.

4.    Gas, mace, irritant dust, electronic devices, intermediate/impact weapons, or less-than-lethal munitions and devices will not be used on those inmates who are incapable of responding to the commands and orders being given to them by staff (e.g., during epileptic seizures, etc.).

5.    Gas, mace, irritant dust, the electronic capture shield, intermediate/impact weapons or less than lethal munitions and devices will not be used on those inmates who remain passive in their cells without causing a disturbance or

LSP - 09.002
Deeember 20, 2006
Page 8

becoming hostile unless the inmate continuously defies orders to come to the bars of the cell. A determination to use gas, mace, irritant dust, the electronic capture shield, intermediate/impact weapons or less than lethal munitions and devices under these circumstances shall be made by the Warden or designee (who should be the highest ranking supervisor on duty in the area).

6.    When an inmate or inmates are creating a disturbance, the officer on duty will attempt to handle the problem by ordering the inmate(s) to cease the disturbance. If the inmate(s) refuses and continues the disruptive behavior, the officer will then call his supervisor.

7.    When the supervisor arrives, he will take charge of the situation and then order the inmate(s) to cease the disturbance. If the inmate(s) refuses the order, he will then order the inmate(s) to come to the bars so that he may be properly restrained and removed from his cell to be placed in administrative segregation or the appropriate area. This procedure also applies to inmates already housed in administrative segregation or isolation.

8.    If these efforts fail to control the situation and the inmate(s) continues the disruptive behavior which (in the opinion of the highest ranking security supervisor on duty in the immediate area where the incident is occurring) may lead to loss of life, serious injury to person(s), extensive destruction of property, or a serious situation which may jeopardize the safety, security and good order of the facility, the supervisor may then use only the minimum amount of the gas, mace, or irritant dust necessary to subdue the inmate(s).

9.    If the highest ranking security supervisor on duty in the immediate area where the incident is occurring determines that gas, mace or irritant dust will be used, he will personally apply the gas, mace, or irritant dust. Only the minimum amount necessary to control the situation will be used. It is the supervisor's responsibility to ensure that the gas, mace, or irritant dust is not used as a form of punishment or on an inmate(s) who is physically incapable of responding to commands being given to him.

10.    The inmate(s) will then be given orders to come to the bars to be handcuffed. If the inmate complies, appropriate restraints will be applied; he will be removed from the cell and offered a change of clothing and to shower. The inmate(s) and affected staff will then be examined and treated, per established protocols, by an EMT or other qualified health care provider.

11.    In the event that the use of gas, mace, or irritant dust has no effect in controlling the situation as described above, the Control Center will be notified to assemble a cell entry team to subdue the inmate(s).

12.    The cell entry team leader will verbally inform the inmate that the electronic device will be used to subdue him.

LSP - 09.002
December 20, 2006
Page 9

13. The cell entry team leader or another trained officer designated by the team leader will arc/test the electronic device in the inmate's presence to show that electricity is being used. The team leader will again give the inmate the opportunity to come to the bars to be restrained.

14. If the inmate still refuses to come to the bars to be restrained, the team leader in charge of the situation will utilize the electronic device and riot helmet, or designate another qualified officer to do the same. The on/off switch will be placed in the "on" position, and the cell entry team will enter the cell.

15. After the team has entered the cell, the officer utilizing the electronic device or shield and riot helmet will approach the inmate and place the shield upon him. Always use the minimum force necessary to control the situation.

16. After the burst of electricity from the electronic capture shield or device has been administered, maintain cover with the shield. Have the inmate move or physically move the inmate to be restrained. If the inmate physically resists, another burst of electricity may be applied with the electronic device. While the inmate is being restrained, maintain cover with the shield. This procedure may be repeated only if necessary. The inmate(s) will then be examined and treated, per established protocols, by an EMT or other qualified health care provider. Only minimum force will be used.

17. The only person authorized to use gas, mace, or irritant dust, or to order the cell to be entered to subdue an inmate(s) is the highest ranking security supervisor on duty in the immediate area where the incident is occurring. Under no circumstances will an officer or officers use gas, mace, irritant dust, electronic devices, intermediate/impact weapons, or less-than-lethal munitions and devices to subdue an inmate(s) without the supervisor being present.

18. When gas, mace, irritant dust, the electronic capture shield, intermediate/impact weapons or less than lethal munitions and devices have been used, affected individuals will be permitted to wash their face, eyes or other exposed skin areas, as soon as possible after the situation has been brought under control, and the individual will be examined by qualified medical personnel.

F. CANINE UNITS

Canine units shall be available to conduct building searches for inmates, to assist in escape procedures, to protect officers and others from serious bodily injury and death, to control crowds/riots, and to detect the presence of concealed contraband.

1. The Warden or his designee shall be responsible for determining whether a situation justifies canine use and appropriate tactical measures that should be

LSP - 09.002
December 20, 2006
Page 10

taken.

2.  Canines shall not be handled or given commands by anyone other than the assigned handler and/or his alternate.

3.  Unless otherwise approved by the Warden or his designee, canines shall be used in a leashed condition at all times.

4.  Canines may be used between the fences to provide perimeter security, when deemed necessary by the Warden or his designee. In the event that canines are utilized in providing perimeter security, one armed officer will provide roving security.

## G.  MEDICAL TREATMENT

As soon as possible after a situation has been brought under control through the use of force, the inmate involved shall be examined by qualified medical personnel. Staff may be referred to institutional medical personnel as appropriate based on the circumstances.

## H.  INVENTORY, REPORTS & DOCUMENTATION

1.  All situations involving the use of force, including the discharge of any firearms, use of chemical agents and use of other security equipment (except for training purposes) must be documented to establish the identity of personnel and inmates involved and to describe the nature of the incident. In reporting instances, the standard Unusual Occurrence Report (UOR) shall be submitted to the Warden or designee no later than the end of tour of duty. Each time the electronic device is used the Armory will provide a Use of Electronic Device Documentation form to be completed and forwarded to the appropriate areas (see attached).

2.  The Armory is responsible for the maintenance and distribution of security equipment to all units, except canine units. Only personnel designated by the Assistant Warden IV/Security shall have access to the Armory's security equipment storage area. The Armory is responsible for the issuance of security equipment to authorized personnel for the performance of official duties, e.g., field officers, trip officers, roving security, tower officers, tactical unit personnel and chase team personnel. Any other issuance of security equipment shall be at the discretion of the Warden or his designee.

3.  The Armory shall issue security equipment to authorized personnel such as shift supervisors and senior security officers of designated areas for use within the institution. Issuance of these items shall be documented by the issuing officers and signed by the receiving officer.

4.  The Armory shall maintain an inventory of all weapons, ammunition, chemical

LSP - 09.002
December 20, 2006
Page 11

agents, and related security devices. A written record will be maintained by Armory personnel regarding the issuance of any equipment in order to determine accountability and responsibility. This report, which will be submitted to the Assistant Warden IV/Security at least monthly, will detail weapon conditions and list expiration dates of other equipment.

5.    At the beginning of each shift, Armory personnel will perform a test of the electronic devices. The results of the tests will be documented. If the electronic device fails the test, the Armory officer will notify the Communications Department to arrange for repairs.

6.    Cellblock units will store chemical agents in a locked cabinet. Chemical agents stored in the cabinet will be inventoried daily. At the beginning and the end of the shift, the Cellblock supervisor will log the weight of each can in the logbook.

In the event that chemical agents are used, the name and number of the inmate the agent was used on will also need to be logged in the logbook. The can will be weighed after the incident and the new weight noted in the logbook.

It is the responsibility of each respective Assistant Warden to ensure that expired agents and empty cans are sent to the Armory for replacement.

I.    LAW ENFORCEMENT/VISITOR WEAPONS

1.    Unless authorized by the Warden, law enforcement officers and visitors are not permitted to carry their firearms inside the confines of the prison.

2.    Perimeter gate security personnel will secure weapons in a secure storage locker and issue receipts to the owners of the weapons.

J.    ABUSE OF INMATES, CORPORAL PUNISHMENT, OR USE OF UNNECESSARY OR EXCESSIVE FORCE

1.    No employee shall abuse an inmate for any reason. Violations are actionable under the Corrections Services Employee Manual, Employee Rules and Disciplinary Procedures.

2.    The force used shall be proportional to the threat to which it is a response and shall cease when the resistance ceases.

3.    Necessary force may include the use of physical contact, chemical agents, mechanical restraints, electric capture shields, and firearms.

4.    The following uses of force are prohibited: corporal punishment, unnecessary force, and excessive force.

LSP - 09.002
December 20, 2006
Page 12

K.    TRAINING

1.    All Corrections Security Officers will be trained in approved methods of self-defense and the use of force as a last resort to control inmates.

2.    All Corrections Security Officers authorized to use firearms will receive training as outlined in Department Regulation No. C-01-008 and Penitentiary Directive No. 04.003.

3.    All Corrections Security Officers authorized to use chemical agents, electronic devices, restraints, intermediate/impact weapons, and less-than-lethal munitions and devices will receive appropriate training.

4.    All instructors authorized to train others in the use of firearms, use of chemical agents, and use of force are certified by a competent authority to conduct such training.  All chemical agent instructors must be trained in the treatment of individuals exposed to a chemical agent.

Burl Cain, CCE
Warden

Attachment:  Use of Electronic Device Documentation Form

This policy supersedes Penitentiary Directive No. 09.002 dated August 22, 2007.

R 07/02/04

Department Regulation No. C-02-006
Penitentiary Directive No 09.002

LOUISIANA STATE PENITENTIARY
## USE OF ELECTRONIC DEVICE DOCUMENTATION

LSP - 09.002
December 20, 2006
Page 13

| DATE: | | TIME: |
|---|---|---|
| **INMATE(S)** | | **DOC #** |
| | | |
| | | |
| | C I R C U M S T A N C E S R E Q U I R I N G U S E O F E L E C T R O N I | |

LSP - 09.002
December 20, 2006
Page 14

C
D E V I C E

SUPERVISOR AUTHORIZING USE OF ELECTRONIC DEVICE:

EMPLOYEE OPERATING ELECTRONIC DEVICE:

OTHER EMPLOYEES ENTERING CELL:

OTHER WITNESSES:

C O M M E N T S A B O U T A C T

LSP - 09.002
December 20, 2006
Page 15

|  | U<br>A<br>L<br>U<br>S<br>E<br>O<br>F<br>E<br>L<br>E<br>C<br>T<br>R<br>O<br>N<br>I<br>C<br>D<br>E<br>V<br>I<br>C<br>E |  |
|---|---|---|
| (How many seconds used, number of times used, effects on the inmate, any effects on employees, problems with the device, etc.) | | |
|  | | |
|  | | |
|  | | |
|  | | |
| **EMT OR OTHER MEDICAL PERSONNEL WHO EXAMINED INMATE(S) AFTER USE OF ELECTRONIC DEVICE** | | |
|  | | |
|  | | |

This form is to be completed each time the Electronic Device is used. Unusual Occurrence Reports will also be prepared and attached. Distribution of reports are to follow the same method used to distribute Unusual

LSP - 09.002
December 20, 2006
Page 16
Occurrence Reports with an additional copy going to Medical Records.

Signed Directive:    03.002.pdf