UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RAYMOND HARRIS,
    Plaintiff

VERSUS

CARL J. SMITH, et al.,
    Defendants

CIVIL ACTION
SECTION "P"
NO. 3:10-CV-00367

JUDGE JAMES T. TRIMBLE
MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Raymond Harris ("Harris") on May 26, 2010. The named defendants are Capt. Carl J. Smith, Major David Voorhies, Lt. Col. Louis Stroud, Officer Reginald Ladmirault,[1] and Maj. Joel Harrell, all corrections officers employed at the Louisiana State Penitentiary ("LSP") in Angola, Louisiana. Harris alleges that, while he was incarcerated in the LSP in May 2009, defendants used excessive force, retaliated against him, wrote a false disciplinary report against him, and denied him due process in his disciplinary proceedings. For relief, Harris asks for attorney fees, monetary damages, costs, and release from extended lockdown.

Defendants answered the complaint and requested a jury trial (Doc. 8). Defendants filed a motion for summary judgment with affidavits and documentary evidence (Doc. 26), to which Harris

---

[1] In his complaint, Harris misspelled Ladmirault's name as "Lamirual."

filed an opposition (Doc. 33). Defendants' motion for summary judgment is now before the court for disposition.

## Harris' Allegations

Harris alleges that, on May 27, 2009, he was shaken down in the restroom by Capt. Carl J. Smith (Doc. 1). Harris contends that after Capt. Smith finished and Harris turned to go, Smith grabbed Harris from behind, picked him up, slammed Harris onto the concrete floor, laid on top of Harris, and placed him in handcuffs (Doc. 1). Capt. Smith then yelled for Lt. Dupuy, Walnut Unit's supervising key officer, who told Capt. Smith to walk Harris to the wet yard Major's office (Doc. 1); at the office, Capt. Smith threw a small baggy on Col. Bordelon's disk and stated, "He got this off the floor." Harris alleges that Col. Bordelon told Capt. Smith to walk Harris to administrative segregation; on the way, Capt. Smith told Harris to remember what happened at Camp-C Tiger, and said he was going to lie on Harris' disciplinary report to make sure Harris got extended lock-down, where Smith's co-workers could "deal with" Harris (Doc. 1).

Harris alleges he was strip-searched at administrative segregation, then sent to the infirmary (Doc. 1). At the infirmary, Harris was told the doctor was busy, so he could wait or return on a sick-call; Harris contends he chose to return two days later, when he began to have pain all over and in his stomach (Doc. 1). Harris contends he had hernia surgery eight months prior and

2

that Capt. Smith's physical abuse caused complications (Doc. 1). Harris alleges his x-rays showed knots in his side and in his stomach, a dislocated shoulder, bruised ribs, and an "injured hernia," for which he was given two Tylenol® (Doc. 1).

Harris contends Capt. Smith did these things in retaliation for an incident that occurred at Camp-C Tiger unit several years before, when Capt. Smith was a sergeant. Capt. Smith was in charge of passing out medication and gave Harris the pill-pack to pop out his own medication, then accused Harris of taking more pills than he was supposed to. Harris contends Smith told him he would get even if it took years to do so.

Harris contends he is 67 years old and that Capt. Smith's physical abuse injured him (Doc. 1). Harris further contends he lost his only means of making money, via hobby-shop privileges (Doc. 1).

Harris contends that Major Voorhies (chairman of the disciplinary board) and Classification Officer Ladmirault conspired to have Harris placed in extended lock-down (Doc. 1). Harris contends that, at this first hearing on June 12, 2009, there was a split decision (between Voorhies and Officer Duncan) as to Harris' guilt (Doc. 1). On June 16, 2009, Harris overheard Voorhies tell Ladmirault about the split decision; a new board composed of Lt. Col. Stroud and Ladmirault found Harris guilty and sentenced him to extended lockdown (Doc. 1). Harris contends the new board violated

3

state law and his right to due process because it was supposed to be an entirely new board; Ladmirault was not supposed to serve on the second board. Harris contends that Major Harrell conspired with the Smith to cover up to his false disciplinary report (Doc. 1).

## Law and Analysis

### Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material". A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82(1992).

Exhaustion

Defendants contend Harris failed to exhaust his administrative remedies because he only exhausted his administrative remedies as to defendant Smith, and not as to any other defendant.

5

Section 1997e(a), as amended by the Prison Litigation Reform Act (PLRA), provides that "[n]o action shall be brought with respect to prison conditions under Section 1983...by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819 (2001). Also, Jones v. Bock, 549 U.S. 199, 211, 237 S.Ct. 910, 918-919 (2007); Days v. Johnson, 322 F.3d 863 (5th Cir. 2003); Clifford v. Gibbs, 298 F.3d 328, 330-331 (5th Cir. 2002); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001). Resort to a prison grievance process must precede resort to a court. Porter, 534 U.S. at 529, 122 S.Ct. at 990. Compliance with prison grievance procedures is all that is required by the PLRA to properly exhaust. Jones, 549 U.S. at 218, 127 S.Ct. at 922-923.

However, the exhaustion requirement imposed by amended § 1997e is not jurisdictional. Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998). Also, Woodford v. Ngo, 548 U.S. 81, 101, 126 S.Ct. 2378, 2392 (2006)("the PLRA exhaustion requirement is not jurisdiction,...thus allowing a district court to dismiss plainly meritless claims without first addressing...whether the prisoner did in fact properly exhaust available administrative remedies"). Failure to exhaust is an affirmative defense under the PLRA, and inmates are not required to specially plead or demonstrate

6

exhaustion in their complaints. Jones, 549 U.S. at 216, 127 S.Ct. at 921. The defendant must plead and prove the prisoner's failure to exhaust. Jones, 549 U.S. 199, 204 (2007). Also, Torns v. Mississippi Dept. of Corrections, 301 Fed.Appx. 386, 389-90 (5th Cir. 2008); Carbe v. Lappin, 492 F.3d 325, 328 (5th Cir. 2007).

Defendants argue that Harris failed to exhaust his claims as to all defendants except Smith. Harris' ARP and the responses indicate that Harris exhausted his claims of excessive force, false disciplinary report, and retaliation (all of which were made against Smith), but did not file an ARP on his claim of denial of due process in his disciplinary proceedings (Doc. 14).

However, Harris contends that he is not required to exhaust his disciplinary proceeding claims through the grievance procedures, but through filing a disciplinary appeal, which he alleges he did. Neither defendants nor Harris filed Harris' disciplinary board records.

The disciplinary appeal procedure is a specialized procedure limited to the assertion of claims arising in the context of disciplinary proceedings. This is specifically recognized in the Louisiana Administrative Procedure statute wherein it is stated that one of the few exceptions to the ARP process is regarding "disciplinary matters", for which "[t]here are specialized administrative remedy procedures in place...." See Louisiana Administrative Code 22: I: 325(F)(1)(a)(ii). Also, Richardson v.

Spurlock, 260 F.3d 495 (5th Cir. 2001).

The burden of proving lack of exhaustion is on defendants, who failed to file Harris' disciplinary proceeding records. Since Harris contends he exhausted his claims relating to the disciplinary proceedings through the disciplinary appeal board, there are genuine issues of material fact which preclude a summary judgment in favor of Voorhies, Stroud, and Ladmirault on the denial of due process claim.

Excessive Force

Harris contends Smith used excessive force against him, as shown by his x-ray results. Defendants argue that Harris did not sustain any injuries, as proven by his x-rays, and therefore Harris cannot show Smith used excessive force against him.

To prevail on an eighth amendment excessive force claim, a plaintiff must establish that force was not applied in a good faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm, and that he suffered an injury. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).

In determining the subjective intent of the officer, the trier of fact must base its determination on relevant subjective factors suggestive of intent. Some of the pertinent factors are the extent of the injury suffered, the need for the application of force, the relationship between the need and the amount of force used, the

threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. Bender v. Brumley, 1 F.3d 271, 278 (5th Cir. 1993), quoting Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992). A convict, or a pretrial detainee, need not demonstrate significant injury where the force used was malicious and wanton. The core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Bender, 1 F.3d at 278, n. 6, quoting Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992).

The law of the Fifth Circuit is that, to support an Eighth Amendment excessive force claim, a prisoner must have suffered from the excessive force a more than de minimis physical injury, but there is no categorical requirement that the physical injury be significant, serious, or more than minor. Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999). However, the Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. The absence of serious injury, while relevant to the inquiry, does not preclude relief. Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997).

Harris contends the May 29-30, 2009 x-rays showed knots in his side and his stomach, a dislocated shoulder, bruised ribs, and an

9

"injured hernia," for which he was given Tylenol® (Doc. 1).

Defendants submitted the affidavit of Dr. Jonathan Roundtree, a staff physician at LSP, who stated that Harris refused treatment on May 27, 2009, but returned to the infirmary on May 29, 2009 complaining of rib pain (Doc. 26, Ex. 6). Dr. Roundtree stated that x-rays taken on May 29, 2009 of Harris' right and left ribs were negative and that, on May 30, 2009, the radiologist reread the x-ray and confirmed it was negative for fracture also (Doc. 26, Exs. 6 and C). Dr. Roundtree further stated there was no objective medical evidence of re-injury to Harris' hernia (Doc. 26, Ex. 6).

Harris has not provided any evidence to show he was injured by Smith. Harris contends that, about a week after May 29, 2009, he saw Dr. Roundtree and complained of pain from having been body-slammed by Smith, so Dr. Roundtree prescribed two pain medications - Levetiracetam and Keppra 500 mg. Harris argues that Dr. Roundtree should have mentioned Harris' pain and pain medication in his affidavit.

Levetiracetam is an anticonvulsant that is used in combination with other medication s to treat certain types of seizures in people with epilepsy. Keppra® is a brand name for Levetiracetam. MEDLINEplus Health Information, Drug Information: Levetiracetam, *available at* http://www.nlm.nih.gov/medlineplus/druginfo/medmaster (a service of the U.S. National Library of Medicine and the National Institutes of Health).

Since Levetiracetam and Keppra are not pain medications, Harris has not rebutted defendants' evidence that Harris was not injured in his confrontation with Capt. Smith. Since Harris has not shown he suffered an injury that was more than de minimis, he has not stated a claim for excessive force against Capt. Smith. Since there are not genuine issues of material fact which would preclude a summary judgment in favor of Smith on the issue of excessive force, defendants' motion for summary judgment should be granted don this issue.

Retaliation

Next, defendants contend Harris failed to state a claim for retaliation against him by Smith when Smith wrote a false disciplinary report.

To state a Section 1983 retaliation claim, a claimant must allege both that the type of activity that he engaged in was protected under the constitution and that the state impermissibly infringed on his right to engage in the protected activity. Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985), citing Owens v. Rush, 654 F.2d 1370 (10th Cir. 1981). Also, Hale v. Townley, 19 F.3d 1068. 1072-73 (5th Cir. 1994); Crowley v. Sinyard, 884 F.2d 804, 812 n.9 (5th Cir. 1989), cert. den., 496 U.S. 924, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990).

Harris alleges Smith retaliated against him for an incident

that took place some time prior to the incident herein, where Smith allegedly accused Harris of taking too many pills at pill call. Harris alleges that, a long time later, Smith falsely wrote him up for possessing marijuana in retaliation for Harris having taken too many pills at pill call.

Harris has not alleged that he was engaged in a constitutionally protected activity; taking pills during pill call (regardless of whether he took too many) does not state such a claim. Therefore, Harris has not stated a claim for retaliation that is cognizable under Section 1983.

False Disciplinary Report

Harris contends Smith and Harrell wrote a false disciplinary report against him.

The constitution demands due process, not error-free decision-making. If the disciplinary proceeding was otherwise fair and adequate, the opportunity that it afforded Harris to clear himself of misdeeds which he did not commit sufficed. Collins v. King, 743 F.2d 248, 253-54 (5th Cir. 1984), citing McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983). When there is a proper and constitutionally correct disciplinary hearing procedure at the prison, plaintiffs may allege specific dissatisfactions with those results in state civil actions. Burnette v. Phelps, 621 F.Supp. 1157, 1162 (M.D. La. 1985). A federal court does not sit to review

de novo evidence supporting prison disciplinary action, but only to redress due process violations. Stewart v. Thigpen, 730 F.2d 1002, 1007 n.3 (5th Cir. 1984). A claim that a prisoner was improperly charged with things he did not do, standing alone, does not state a due process claim. Also, Doolittle v. Holmes, 306 Fed.Appx. 133 (5th Cir. 2009).

Therefore, Harris's claim against Smith and Harrell of a false disciplinary report does not state a claim for violation of a constitutional right cognizable under Section 1983.

Due Process

Harris contends Voorhies, Stroud, and Ladmirault violated his right to due process by failing to provide him with a properly composed disciplinary board. Harris contends that, since Ladmirault sat on his first disciplinary board, which did not reach a verdict, it violated due process for Ladmirault to sit on the second disciplinary board and convict Harris.

As stated above, the constitution demands due process, not error-free decision-making. Collins v. King, 743 F.2d 248, 253-54 (5th Cir. 1984), citing McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983). An impartial hearing board is required to the extent that a member of the board may not participate in a case as an investigating or reviewing officer, or be a witness. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 2983 n. 20, 41 L.Ed.2d 935

(1974). However, prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts. Frank v. Larpenter, 234 F.3d 706, *3 (5th Cir. 2000). To prevail, Harris must assert that the board presented such a hazard of arbitrary decisionmaking that it should be held violative of due process of law. Frank, 234 F.3d at *3. Harris is entitled to a fair tribunal, but the extent of impartiality in prison disciplinary proceedings must be gauged with due regard to the fact that they take place in a close, tightly controlled environment in which guards and inmates co-exist in direct and intimate contact. Frank, 234 F.3d at *4.

In the case at bar, Harris complains because Ladmirault served on both the first and second disciplinary boards. Although it may have been procedurally improper for Ladmirault to have done so, Harris had not alleged or shown that Ladmirault was actually biased against him. Moreover, Harris has not alleged any wrong-doing whatsoever by Stroud, who also sat on the second disciplinary board and convicted Harris, and Harris' only complaint against Voorhies is that he told Ladmirault he had previously voted to convict Harris. Therefore, Harris has not alleged or shown that he did not have an impartial tribunal and has not stated a claim for a due process violation against Ladmirault, Stroud or Voorhies.

Since Harris has not alleged or shown that his disciplinary board was not impartial, Harris has not stated a claim for a due

process violation cognizable under Section 1983. Since there are no genuine issues of material fact which would preclude a summary judgment, defendants' motion for summary judgment should be granted in favor of Stroud, Voorhies and Ladmirault on the issue of due process.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion for summary judgment be GRANTED and that Harris' action against all defendants be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 3 day of May, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE